**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**DAVID L. HAY,** Civil No. 00-1906 (DSD/JGL)

Petitioner,

**v.** **REPORT AND RECOMMENDATION**

**FEDERAL BUREAU OF PRISONS,**

Respondent.

---

APPEARANCES

Petitioner David L. Hay, pro se

Lonnie F. Bryan, Esq., Assistant United States Attorney, for Respondent

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Petitioner David Hay's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons set forth below, this Court recommends that Mr. Hay's Petition for a Writ of Habeas Corpus be denied, and the case should be dismissed with prejudice.

FILED 2-7-01
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(11)

I. **Factual and Procedural History**

Petitioner Hay is an inmate at the Federal Correctional Institute in Waseca, Minnesota (FCI-Waseca). Mr. Hay is serving an 86-month sentence for conspiracy to distribute cocaine and methamphetamine and for being a felon in possession of a firearm, for which he was convicted on January 26, 1998. His projected release date is April 26, 2003 with good time credit.

When an offender is committed to the custody of the Bureau of Prisons (BOP), the BOP assigns the inmate a security classification, which affects his assignment to a particular institution, and a custody classification, which determines his freedom within the institution. See BOP Program Statement 5100.07, Security Designation and Custody Classification Manual (hereinafter referred to as Resp. Ex. B), at 5-7. In his Petition for habeas relief, Mr. Hay first contends that the BOP wrongfully applied a management variable, which resulted in his placement in a higher-than-warranted security level institution. BOP institutions are grouped into five security levels: minimum, low, medium, high, and administrative. (Resp. Ex. B at 5.) The assignment of an inmate to a particular institution is based on various factors including the offender's security and program needs, administrative factors, and the application of management variables. (Id. at 6, 9.)

Management variables "reflect and support the professional judgment of [BOP] staff to ensure the inmate's placement in the most

appropriate level institution." (Id. at 9.) Variables are required when an inmate is placed "at an institution level inconsistent with the inmate's security score." (Id.) In this case, Petitioner Hay submits that the BOP should not have considered his 1976 arrest on rape charges[1] as a management variable adversely affecting his security level, which was upgraded from "minimum" to "medium."

Second, Petitioner Hay avers that the BOP erred in determining his custody classification. When an offender is institutionalized by the BOP, the BOP performs a review process to assign a custody level based on the inmate's current offense, criminal history, and institutional adjustment. (Resp. Ex. B at 8.) The "custody level (i.e., COMMUNITY, OUT, IN, and MAXIMUM) dictates the degree of staff supervision required for an individual inmate" within the institution. (Id.) Mr. Hay asserts that the BOP should not have considered his 1976 arrest on rape charges in determining his custody classification.

Petitioner Hay's custody classification form shows a custody level of "IN."[2] (Pet. Ex. 4.) The form also shows Petitioner's security level is

---

[1] The pre-sentence investigation report prepared in connection with Petitioner's federal conviction included an arrest for rape in 1976, but he was never indicted for the offense.

[2] A custody level of IN is the "second highest custody level assigned to an inmate which requires the second highest level of security and staff supervision. An inmate who has IN custody is assigned to regular quarters and is eligible for all regular work assignments and activities under a normal level of supervision. Inmates with IN custody are not eligible for work details or

"minimum," but that a management variable of "Greater Security" was applied. John Junk, a Designations Officer for the BOP, decided that Mr. Hay should be assigned the management variable for Greater Security because of the 1976 arrest. (Junk Aff. ¶ 6.) The custody classification form also notes that a custody reduction was denied in December 1998 "due to the inmate's past arrest for rape." (Pet. Ex. 4.) When Petitioner Hay requested a change in his security level, the Regional Director of the BOP stated that although Petitioner was not convicted of rape, his "possible involvement in the offense demonstrates your need for more controls than are provided by a minimum facility." (Pet. Ex. 5.)

Petitioner asserts that the BOP violated its own rules and regulations in considering his arrest for rape when it determined his security level and custody classification. Mr. Hay avers that the designations constitute violations of his due process rights under the United States Constitution. Petitioner claims that his custody classification has adversely affected his conditions of confinement, including being considered a sex offender, being denied early release eligibility from the BOP Residential Drug Abuse Program, and being denied a "gate pass." Mr. Hay further asserts that the management variable of "Greater Security" has resulted in his placement in a higher-than-warranted security level facility.

---

programs outside the institution's secure perimeter." (Resp. Ex. B at 8.)

In response, the BOP contends that the petition lacks merit for the following reasons: (1) this Court lacks subject matter jurisdiction because the petition does not name Mr. Hay's custodian, the Warden at FCI-Waseca; (2) this Court does not have subject matter jurisdiction because Respondent has not waived sovereign immunity; and (3) Respondent is entitled to judgment because it maintained records with an acceptable degree of accuracy. Respondent acknowledges that it relied on Mr. Hay's 1976 arrest to increase his security classification from "minimum" to "medium," but denies violating any law or BOP regulation.

## II. Discussion

As an initial matter, the BOP asserts that the proper Respondent in this case is R. Mundt, Warden at FCI-Waseca. The BOP correctly states that the only proper respondent in a habeas corpus petition under 28 U.S.C. § 2241 is the custodian of the inmate. See 28 U.S.C. §§ 2242, 2243; Braden v. 30th Judicial Circuit, 410 U.S. 484, 495 (1973). In habeas proceedings, the custodian of an inmate is the warden of the facility where the inmate is housed. See Braden, 410 U.S. at 495; Cobb v. Wyrick, 379 F. Supp. 1287, 1297 n.2 (D. Mo. 1974). Accordingly, the Court recommends that R. Mundt, Warden at FCI-Waseca, be substituted for the Federal Bureau of Prisons as Respondent.

### A. The Security and Custody Classifications

Federal prisoners seeking post-conviction relief may petition for a writ of habeas corpus under 28 U.S.C. § 2241. Federal courts may entertain a habeas corpus petition only on the grounds that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal prisoner's challenge to the BOP's application of its security and custody classification regulations, which allegedly result in over-restrictive conditions of confinement, may be brought in a petition for writ of habeas corpus. See, e.g., Albers v. Ralston, 665 F.2d 812, 813, 815 (8th Cir. 1981); Bloomer v. Holland, No. 99-5236, 1999 WL 1023587, at *1 (6th Cir. Nov. 5, 1999) (unpublished opinion); Posey v. DeWalt, 86 F. Supp. 2d 565, 566, 570-71 (E.D. Va. 1999). However, federal prisoners may not seek habeas relief for every condition of confinement, but only conditions which are alleged to be substantial infringements of constitutional rights. See Albers, 665 F.2d at 815 (quoting Willis v. Ciccone, 506 F.2d 1011, 1019 (8th Cir. 1974)).

In the present case, Petitioner Hay's claim implicates due process. The threshold inquiry in a due process claim is whether the petitioner has demonstrated that the government has deprived him of a protected interest. See Sandin v. Conner, 515 U.S. 472, 486 (1995). BOP rules and regulations may create constitutional liberty interests. See Albers, 665 F.2d at 816 (citations omitted). Thus, the question is whether Program Statement 5100.07

grants inmates protected liberty interests in custody and security classifications.

In Albers, which also addressed a BOP custody and security classification procedure, the Eighth Circuit expressed doubt that prisoners have a constitutional interest in a six-point credit for voluntary surrender. See id. at 816 n.3. Other courts have expressly held that prisoners do not have a due process liberty interest in their security and custody classifications. See Sandin, 515 U.S. at 484 (holding that segregated confinement does not present atypical, significant deprivation as compared to the routine incidents of prison life, and therefore finding no liberty interest in remaining free from such confinement); Meachum v. Fano, 427 U.S. 215, 222, 224 (1976) (no liberty interest in prisoners to be free from transfers from a medium security prison to a maximum security prison); Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 668-69 (no liberty interest in work release program or halfway house placement); Phillips v. Hawk, No. 98-5513, 1999 WL 325487, at *2 (D.C. Cir. Apr. 14, 1999) (unpublished opinion) (citations omitted) (no liberty interest in placement or security classification while incarcerated). In Sandin, the Supreme Court explained that whether a prisoner has a liberty interest protected by due process depends on the nature of the interest at stake, not just on the language of the procedures governing that interest. See 515 U.S. at 483-84. The Sandin decision significantly limited the protected liberty

interests available to prisoners. See Sesler v. Pitzer, 926 F. Supp. 130, 133 n.5 (D. Minn. 1996).

In the present case, the Court finds that Petitioner Hay does not have a protected liberty interest in his security level or his custody classification, see Phillips, No. 98-5513, 1999 WL 325487, at *2, or in the purported effects of those classifications. Petitioner does not have a liberty interest in assignment to a prison with a particular security level. See Meachum, 427 U.S. at 224-25; Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Moorman v. Thalacker, 83 F.3d 970, 973 (8th Cir. 1996). Petitioner does not have a liberty interest in participation in a work release program or, in other words, receiving a "gate pass." See Callender, 88 F.3d at 668. Petitioner has no liberty interest in early release eligibility. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979); Moody, 429 U.S. at 88 n.9 (no liberty interest in eligibility for rehabilitative programs). With respect to Mr. Hay's allegation that he is considered a sex offender, the Court finds no evidence of that claim in his inmate profile. (Resp. Ex. A.)

It is well-established that when the BOP adopts a regulation or Program Statement, it must be followed. See Burton v. Ciccone, 484 F.2d 1322, 1324 (8th Cir. 1973). It is equally well-established, however, that courts must give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to

preserve internal order and discipline and to maintain institutional security." Falls v. Nesbitt, 966 F.2d 375, 379 (8th Cir. 1992) (citation omitted). Consequently, to achieve balance between these two edicts, unless the regulation confers a protected liberty interest, a prisoner is denied redress. See Corso v. Petrovsky, 704 F.2d 424, 425 (8th Cir. 1983) (declaring that absent discriminatory application of rules "or a violation of constitutional rights, we should defer to the [BOP's] interpretation of its regulations") (citing Albers, 665 F.2d at 816).

In the present case, as a basis for applying the management variable of "Greater Security" to Petitioner, Mr. Junk relied on the portion of Program Statement 5100.07 which states: "In circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, escape risk but no DHO finding, etc.) than their assigned security level, they may be placed in an institution outside normal guidelines, and this Management Variable shall apply." (Junk Aff. ¶ 4; Resp. Ex. B at 60.) The Court notes that the manual does not authorize consideration of prior arrests. Similarly, with respect to custody classifications, Program Statement 5100.07 provides that the inmate's relevant criminal history includes criminal convictions, not arrests. (Resp. Ex. B at 8.) However, Program Statement 5100.07 also authorizes prison officials to exercise their "professional judgment within specific guidelines" in making the classifications. (Resp. Ex. B at 4.)

The Court is not unsympathetic to Petitioner's challenge of the BOP's consideration of a prior arrest, for which Petitioner was neither indicted nor convicted, in its custody and security classifications. However, it is not a basis for habeas relief because Program Statement 5100.07 does not afford Petitioner a protected liberty interest in a particular custody classification or being confined in a particular institution. Furthermore, the BOP is entitled to exercise its discretion in determining custody and security classifications. See Moody, 429 U.S. at 88 n.9; Mohammed v. Sullivan, 866 F.2d 258, 259 (8th Cir. 1989); Corso, 704 F.2d at 425. This Court therefore recommends that Petitioner Hay's Petition for Writ of Habeas Corpus be denied, and the case should be dismissed with prejudice.

**B. Petitioner's Allegation that the BOP Maintained Inaccurate Records**

Petitioner Hay claims that the BOP violated the Privacy Act, 5 U.S.C. § 552, by failing to maintain accurate records and failing to amend inaccurate files. Assuming without deciding that this claim may be raised in a § 2241 petition, the Court finds the claim meritless.

The Privacy Act provides safeguards for individuals by requiring federal agencies to maintain records in an accurate manner. See 5 U.S.C. § 552a(e)(5). To prove a violation of the Act, a person must show (1) he has been aggrieved by an unfavorable determination; (2) the BOP failed to maintain accurate records; (3) the BOP relied on inaccurate records in making the

adverse determination; and (4) the BOP willfully or intentionally maintained inaccurate records. See Deters v. United States Parole Comm'n, 85 F.3d 655, 657 (D.C. Cir. 1996) (citations omitted).

Petitioner does not challenge the accuracy of the documents; he challenges an alleged "inference" made by prison officials after assessing the documents. The Court finds no evidence that the BOP failed to maintain accurate records, relied on inaccurate records, or intentionally maintained accurate records. The BOP merely relied on an accurate pre-sentence investigation report, (Resp. Ex. E), and a case investigation report, (Resp. Ex. D), in applying the "Greater Security" management variable to Petitioner's classifications. Petitioner has failed to establish elements essential to his Privacy Act claim, and this aspect of his Petition should be denied as well.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1) The Bureau of Prisons should be dismissed as a party, and R. Mundt, Warden at FCI-Waseca, should be substituted as Respondent; and

(2) Petitioner David L. Hay's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) should be **DENIED**, and the case should be **DISMISSED WITH PREJUDICE**.

Dated: February 7, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Under Fed. R. Civ. P. 72 and D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by Feb. 26, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. All briefs filed under this rule shall be limited to ten pages. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.